Dear Ms. Lee:
As the representative for the Hillsborough County Metropolitan Planning Organization, you ask substantially the following question:
May the Joint Citizens Advisory Committee comply with Sunshine Law in holding its quarterly meeting by linking simultaneous meetings of citizens' advisory committees in each of its participating counties, networked via computers, conference call, video or some other electronic media technology, so that all members of the committees and the public can hear and participate at the meeting, when each citizens' advisory committee has a quorum present for its meeting?
Pursuant to section 339.175(5)(e), Florida Statutes, each metropolitan planning organization (MPO) must appoint a citizens' advisory committee (CAC), with the membership of each committee reflecting a broad cross-section of local residents interested in the development of an efficient, safe, and cost-effective transportation system. In Hillsborough County, a citizens advisory committee was created to advise the MPO. Your letter indicates that four members of the Hillsborough County CAC and four members of the Pinellas County CAC make up a Joint Citizens Advisory Committee (JCAC). The JCAC advises the Chairs Coordinating Committee (CCC), created by section 339.175(5)(h), Florida Statutes, and composed of the MPOs for Hernando, Hillsborough, Manatee, Pasco, Pinellas, Polk, and Sarasota counties. You state that the JCAC and the CCC meet on a quarterly basis.
The JCAC wishes to expand its membership to the other counties represented on the CCC, but geographical distance among the counties is a hindrance for travel of the members to a single location for meetings. The Hillsborough County MPO is investigating the possibility of using remote technology to expand the participation in the regional JCAC, by having simultaneous meetings in each county in which a physical quorum of the local CAC is present, with the meetings linked through networked computers, conference calls or other methods.
This office has previously concluded that citizens' advisory committees appointed by an MPO are subject to the provisions of section 286.011, Florida Statutes, Florida's "Government in the Sunshine Law."[1] Such a requirement would also apply to any other boards or commissions or subcommittees formed by an MPO to carry out official business, such as a JCAC.[2]
Section 286.011(1), Florida Statutes, provides:
 "All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings."
The statute has been determined to show a legislative intent that its provisions apply to all meetings, whether formal quorum meetings or informal preliminary meetings, at which all or part of the members of a board or commission deal with matters upon which it is foreseeable that action will be taken by the board.[3]
This office has been asked on several occasions to provide assistance to local boards regarding the participation of their members in public meetings via electronic means.[4] In one instance, it was determined that a county commissioner who was physically unable to attend a commission meeting due to a serious medical condition could vote by an interactive video and telephone system when a quorum of the commission members was present at the designated public facility.[5] The system allowed the commissioner to see the other members of the board and the audience at the meeting, and the board and audience could see her.
In Attorney General Opinion 2001-66, this office considered whether an airport authority could conduct discussions or meetings over the internet when such discussions or meetings were noticed to the general public, viewable by the general public, open to input by the general public, and recorded for public inspection. This office found that the authority members could conduct informal discussions and workshops over the internet, provided proper notice was given and interactive access by members of the public was provided. Such interactive access must include not only public access via the internet but also designated at places within the authority boundaries at which the airport authority makes computers with internet access available to members of the public who may not otherwise have internet access. It was advised that notice of such discussions and workshops should also include the locations at which computers with internet access would be located. For meetings at which a quorum was necessary for action to be taken, however, the opinion concluded that physical presence of the members making up the quorum would be required in the absence of a statute providing otherwise.
The use of interactive electronic media to increase public participation in meetings and the use of such media to allow members of a board or commission to participate in a duly noticed public meeting does not necessarily raise Sunshine Law issues, but rather implicates the ability of an entity to conduct official business with a quorum. In addressing the use of interactive electronic media by members of a board or commission to participate in a meeting they are physically unable to attend, this office has concluded that such participation is appropriate only in situations where the member is suffering a serious medical condition and a quorum of the board members is physically present at the public meeting place. It is clear from the discussion above that the use of electronic media technology for conducting official business by board members has limitations when there is a need for a quorum or when a meeting must be held at a designated location.[6]
This office was recently asked to comment on the use of video conferencing and digital audio for members of the Monroe County Commission to conduct special meetings or workshops at which no official action was to be taken.[7] Because of Monroe County's unique geography spanning 120 miles connected by bridges, the board of county commissioners was exploring the use of electronic communication to hold special and workshop meetings in order to minimize the travel time and expense of commissioners and staff. After discussing the limitations on the use of such technology for regular meetings at which official actions would be taken, it was concluded that electronic media technology could be used for workshops or special meetings where no formal action would be taken. The county was advised, however, to be vigilant in adhering to the requirements of the Sunshine Law and to ensure that the meetings or workshops using electronic media technology were not forums for the commission to undertake formal decisionmaking.
In the instant situation, the individual CACs or their members would be creating a larger multi-county JCAC. All of the individual meetings of the CACs would be electronically connected and no single location would be designated as the one at which the JCAC would meet. While the individual CACs may have a quorum present at each location for purposes of their meeting, their participation from remote locations would not appear to constitute a quorum for the JCACs meeting.[8]
The Legislature has provided authority for the use of electronic media technology for participation in meetings of statewide boards or commissions.[9] However, I have found no authority, nor has any been brought to my attention, allowing a JCAC or other committee created by an MPO to use such technology to consolidate multiple meetings at remote locations by electronic technology to form a single meeting of the committee.[10] If one of the goals of expanding the membership of the JCAC is to increase citizen participation from the counties constituting the CCC, the MPO may wish to consider designating a specific location for the quarterly meeting of the JCAC, with electronic media technology used to allow citizens in member counties to participate in the meeting. You may also wish to seek legislative changes that would allow boards or commissions with multi-county members to use electronic media technology in the same manner allowed for statewide boards or commissions.
Accordingly, it is my opinion that the Joint Citizens Advisory Committee whose members are representatives from several county metropolitan planning organizations may use electronic media technology to link simultaneously held public meetings of citizens' advisory committees allowing all members of the committees and the public to hear and participate at workshops. The use of electronic media technology, however, does not satisfy quorum requirements necessary for official action to be taken by the joint committee.
Sincerely,
Charlie Crist Attorney General
CC/tals
[1] Op. Att'y Gen. Fla. 82-35 (1982).
[2] See Ops. Att'y Gen. Fla. 92-26 (1992) and 98-13 (1998).And see Town of Palm Beach v. Gradison, 296 So. 2d 473 (Fla. 1974) (advisory board or committee appointed by a governmental body to make recommendations to the appointing authority and deliberating on matters upon which foreseeable action will be taken is subject to the Sunshine Law; scope of s. 286.011
includes the "inquiry and discussion stages" of meetings of public bodies). See also IDS Properties, Inc. v. Town of PalmBeach, 279 So. 2d 353 (Fla. 4th DCA 1973) (no government by delegation exception to s. 286.011; a public body may not escape application of Sunshine Law by delegating conduct of public business through use of an alter ego).
[3] Board of Public Instruction of Broward County v. Doran,224 So. 2d 693 (Fla. 1969), and City of Miami Beach v. Berns,231 So. 2d 847 (Fla. 3rd DCA 1970).
[4] See Ops. Att'y Gen. Fla. 2003-41 (2003), 2002-82 (2002), 2002-32 (2002), and 98-28 (1998).
[5] Op. Att'y Gen. Fla. 92-44 (1992). And see Ops. Att'y Gen. Fla. 94-55 (1994) (out-of-state member of board of trustees of public museum could participate in public meetings through the use of a telephone when quorum is present, even thought no statute required the presence of a quorum at meetings), 2002-82 (2002) (physically disabled member of municipal board may attend meeting electronically if quorum is otherwise physically present at meeting).
[6] See Op. Att'y Gen. Fla. 98-28 (1998), in which this office concluded that the statutory requirement that a school board meet at a specified place and the statutory recognition that a majority of those present constitutes a quorum which is required to conduct business, precludes use of electronic media to conduct a school board meeting. The opinion recognized that the convenience and cost savings of allowing members from diverse geographical areas to meet electronically might be attractive to a local board or commission such as a school board, but noted that the representation on a school board is local and such factors would not by themselves appear to justify or allow the use of electronic media technology in order to assemble the members for a meeting.
[7] See If. Op. Att'y Gen. Fla. to The Hon. Charles "Sonny" McCoy, Monroe County Commission, dated November 29, 2005.
[8] See Op. Att'y Gen. Fla. 2001-66 (2001) (physical presence of members of board necessary to constitute quorum). See, e.g.,
Ops. Att'y Gen. Fla. 83-100 (1983), and 89-39 (1989), quoting 62 C.J.S. Municipal Corporations s. 399 which provides:
 "In order to constitute a quorum the requisite number of members must be actually present at the meeting and the requisite number cannot be made up by telephoning absent members and obtaining their vote over the telephone."
[9] See s. 120.54(5)(b)2., Fla. Stat., authorizing state agencies to adopt rules for conducting meetings by means of communications media technology.
[10] See s. 120.52(1), Fla. Stat., defining "[a]gency" as used in the act and stating, "[t]his definition does not include . . . any metropolitan planning organization created pursuant to s. 339.175, [or] any separate legal or administrative entity created pursuant to s. 339.175 of which a metropolitan planning organization is a member. . . ." Cf., Op. Att'y Gen. Fla. 98-28 (1998) (school board not "state agency" that may use s.120.54(5)(b)2., Florida Statutes, for authority to conduct meetings by means of communications media technology).